of the City of Hartford, 24-11. Good morning, Mr. Sussman. Good morning. May it please the Court, Michael Sussman appearing for Ms. Laiscell. The District Court properly found that Ms. Laiscell had made out a primary case of retaliation, and the question before this Court is whether the evidence of non-retaliatory reasons were or were not pretextual such that summary judgment should not have been granted. I think that's clearly the issue in the case. There were three reasons that were induced by the defendant and the District Court considered, one of which the District Court did not view as particularly helpful to the defendant. So I'll discuss the first two briefly. The briefs do cover this in some detail, and I don't want to be repetitive. The first reason related to the health insurance issue. There was an audit done by the school district. The audit revealed a large number of individual employees who had not taken people off of their insurance policy when they ought to have done so. My client's affirmation as deposition indicates that she had attempted to do so and that it hadn't happened. She was notified of this. It was a time to do so in 2018. She did so. The total cost to the district was calculated at $6,991, and this was the principal reason induced for her termination after she filed the complaint with the Connecticut Human Rights Commission. With regard to that issue, as we point out- How would a reasonable jury conclude that that was pretext for retaliation, given the timeline of the investigation when she's placed on leave, et cetera? Well, very easily. There are a number of individuals, Your Honor, as we point out, who had more significant debits, if you will, than she did, including a woman who had over $220,000 in racked-up insurance. That woman was not acted upon until my client raised a retaliation claim in August of 2018 with the Connecticut, and then it took them another year to go after her. A jury could see this as entirely selective. The other thing a jury could see, and I think it's important here, is that the gentleman who was in charge of risk management, who was my client's principal adversary, Mr. Griffin, who came to be her subordinate for a brief period of time, is the individual who was in charge of this entire program. Nothing was done to him or any of his subordinates who had responsibility for the insurance program. That's part of the record. There was absolutely no action taken against any of them. Moreover, the program which my client responded to is- That's a theory of comparators that someone who improperly kept an ex-spouse on their insurance are comparable to the people overseeing the policy? Well, yes. I mean, in other words, first of all, in the facts, taking most favorably of my client, she did attempt, and as far as she knew, withdrew her husband years before. The district court ignores that, apparently, and it seems to me taking the record most favorably of my client, it's a salient fact. Second of all, to answer your question directly, as I mentioned, there were any number of individuals in managerial and non-managerial positions who had the same problems my client had, who were not taken-no action was taken against them. Wait a second. Let me just focus on this. Sure. There were people who kept dependents on their insurance who were managerial positions, who no action was taken against? Who was that? My understanding, Your Honor, is there were approximately 80 individuals in the school district, including teachers, including principals, who were in the same position as my client. They did not properly remove, although, again, my client indicates she believed she had properly removed. No, but their position is that, at least with respect to the teachers, I don't know about principals, that your client was the only high-level person, in fact, the executive director of financial management, who's an at-will employee, who was in this category. And that was the reason that she's not similarly situated in all material respects to those people. She is similarly situated in all material respects. Garzinski makes clear, this Court's decision there makes clear that managerial rank does not matter if, and here are the two points, the standard was pervasive, and here the standard was pervasive, and the conduct was equally serious, and it was equally serious. There were people who, I mean, to the extent one blames them for the amount of coverage that a relative received, which I'm not sure is something you can blame someone for, that's another factor, but they were all similarly situated in those two material respects. Does it matter that, with respect to these comparators, that, as I understand it, they were all union members? No, it doesn't matter. So why not? Why would it? They were subject to the same standards of conduct, Your Honor. There are reasons why an employer would treat a high-level manager very differently from a union member, a member of a union with which it has a contract. I don't frankly agree. I think that if there's a standard in the school district that you are to do something, which standard applies to all, which is indisputed in this record, and an individual doesn't do it, and $230,000 or $20,000 of monies are expended on that person's relative, that has to be viewed as equally serious than someone of a higher rank. My client did not have supervisory responsibility for this program. Mr. Griffin did. As I pointed out earlier, nothing happened to Mr. Griffin, though, for years. Mr. Sussman, the idea is that someone of that level, especially if they're the director of financial management, should know better than a teacher who might not know better. That's the theory. We have other cases. They cited one where we said someone who's in charge of human resources is more culpable and is not similarly situated to every other employee. You have cases, respectfully, that go both ways with regard to how rank plays into this. But my principal point is if you take the record most favorably to my client, which the district court was obliged to do, and I believe this court is on de novo review, the record is that my client understood that she had made that change when she contacted Elaine Boer-Figlio. Mr. Sussman, the record is they hired an independent firm, as Judge Nathan pointed out, before your client complained, right? They hired an independent firm to investigate this, right, before the complaint. Yes? They did. All right. That firm came back and reported to them that they believed that your client engaged in the misconduct. Your client had an explanation, but there was no documentation for it. So they are accepting an independent assessment that your client engaged in misconduct. Judge, the investigation focusing on my client itself was inappropriate, where they had evidence at the point they commenced that specific investigation. This was a pervasive practice in the school district. They had approximately 100 people who engaged apparently in the same practice. But how was that motivated by retaliation if they did so before she complained? Doesn't that completely go against you? They didn't proceed, just to be fair. They didn't proceed with any suspension of my client until March 16th when Mr. Griffin complained. Mr. Griffin complained. Then my client was suspended. My client was terminated on July 10th, which was approximately two and a half months after she filed her complaint with Human Rights. Then there was another complaint filed about retaliation. Then they went after Ms. Wakefield. That's the sequence of events here. And Mr. Griffin, the other argument that was raised, is that Mr. Griffin claims that my client deleted a sentence of a report, an e-mail that he wrote to her, and that forms a basis for a retaliation, which, again, the district court said that was essentially nothing. And the third point is that they went after her because she didn't have backup on her personal computer. On the second point, again, I'm compelled to ask about the timeline again, because Griffin says to her before she filed her complaint that you've violated the company policy. And there wasn't a company policy. The district court found there wasn't a company policy. How, then, do we understand that? Griffin's not the decision-maker, Your Honor. Griffin is her subordinate at that time. We're talking about people higher than Griffin did. If Griffin made the complaint, it doesn't mean that the district is going to take adverse action against my client based on the complaint. Griffin isn't the decision-maker. The third matter that was raised is that my client didn't have backup of financial documents. As we point out, the district never specified a single document that she didn't have backup on. Her computer was not her personal computer. It was the district's computer that she had all the material on, which she knew to be backed up on a daily basis, which it was. A jury could conclude from this. Thank you. Good morning, Your Honors. Peter Murphy for the Hartford Board of Ed. Your Honors, Judge Bryant, correctly, under judgment as a matter of law, in favor of the Board, on the retaliation and the discrimination claim, which is not before Your Honors today. A couple quick points, Your Honors. One, on the reason for the termination. I think you just heard that the principal reason was the maintenance of the husband on the health insurance, and that's just not true. If you look at the termination letter in the record, it was three reasons, which together constituted unprofessional conduct, wholly unacceptable and unprofessional conduct. And so the attempt to focus on just one of those areas is inappropriate. Two, I thought I heard an argument there were other managers that were not disciplined, and that's not my understanding. Again, I didn't see that argument in the brief, and I don't understand it to have been made before. I think the specific claim was that there were principals. So whether they're financial managers or not, they're in positions of authority, I suppose. So at a certain level of generality would be comparators. I suppose, Your Honor, but principals are also teachers, and teachers are also subject. Principals are also subject to the collective bargaining agreements that Your Honors were talking about before, as well as 10-151, the Connecticut statute that applies to teacher discipline and termination. Ms. Feisel was an at-will employee. Because she's a high-level employee, as Your Honors noted, she was the executive director of financial management. Someone who wanted to be the CFO and just a month prior had interviewed for the CFO position. The district did go after, I think, Wakefield, who was a union teacher, right? Yes? I missed the first part of your question, Your Honor. Wakefield. There was another individual that Mr. Sussman referred to who, notwithstanding the fact there was a collective bargaining agreement, did try to remove, correct? He or she withdrew or resigned. Yeah. The way in the record the evidence is that under 10-151, the superintendent did what she had to do, and she issued a notice to Ms. Wakefield that your employment was under consideration for termination. It's the first step in the process. And the teacher has the right to request a hearing, and before she did that, Ms. Wakefield resigned. So the superintendent had initiated the termination process, but Ms. Wakefield resigned. My point is that it's not – because they were unionized, that this could not have been a basis for termination of a union employee, correct? It potentially could have, but they're just – when this court looks – I don't know if the record bears this out – that Ms. Wakefield, he says, was targeted, he would say, only after she complained. Right. And that shows potentially a pattern of retaliation. What's your response to that? I think the timeline is important here, Your Honor, and I think you heard a little bit about it. But if you look at it, the independent investigator wasn't just hired before she filed her complaint. She was actually put on leave, administrative leave.  You're talking about his client? Ms. Lizell. He says – is it Ms. Wakefield or Mr. Wakefield? Ms. Wakefield. He says was not – no discipline was taken against her. She filed the complaint, and then these proceedings under the union rules are instituted to remove her. So why doesn't that suggest that this was the people who were being targeted, it was because of a complaint? I don't believe there's any evidence Ms. Wakefield filed a complaint. Was that part of Your Honor's question? Yeah, I thought there was, but maybe I misunderstood. No, I don't believe so. So the contention is that it was the plaintiff's filing of the complaint that caused the board to move with respect to Wakefield so as to eliminate a comparator, an otherwise applicable comparator. I don't – I understand he made that argument, but I don't understand the sense of it because, on the other hand, their also argument it took too long to terminate Ms. Wakefield. It was a year later or something. The important person in this analysis is Ms. Liesel, and it's undisputed that Ms. Liesel on March 16th was put on leave, that the board hired an independent investigator to review the matter, that the independent investigator met with Hartford Board of Ed employees on two occasions in March, and then on April 12th met with Ms. Liesel. And look at what Ms. Liesel did during that meeting. She refused to answer questions about budgetary documents on her laptop. She refused to answer questions about her husband being on the board's insurance. She took an attitude in that meeting that was not one of cooperation. And all that occurred before Ms. Liesel filed her first CHRO complaint on a wholly different decision. And so, as the district court appropriately noted, things were well underway at that point, meaning when she first filed her CHRO complaint, and under the law cited by the district court, and in our briefs in this matter both below and here, employers are entitled to continue the decision-making process. Filing a complaint doesn't insulate an employee from discipline, and it certainly did not here. So, your honors, I think both in terms of the timeline and the lack of any similarly situated employees, the district court appropriately- I'm now a little confused about this Wakefield, and forgive me. So, Wakefield was a union member? Well, yeah, she was a teacher, correct. She was a teacher. And there was a termination, there was a beginning of the termination process applied to her. To Wakefield. Correct. The superintendent initiated termination proceedings. She did not file a complaint. He's alleging that, as Judge Nathan pointed out, that it was essentially coverage after his client filed a complaint to do the same with respect to her. That's the argument. I understand the argument, but as Judge Bryant found, Ms. Wakefield is not a similarly situated employee, so the difference doesn't matter. Because of what? Well, for three reasons, I think, your honor. One, she didn't engage in the conduct that Ms. Liesel engaged in. She only engaged in a portion of it, right, in terms of failing to disclose that someone should have been moved from the insurance. But in the termination letter, the Hartford Board of Ed didn't just terminate Ms. Liesel for that reason. It also terminated her because she had altered an email, which they viewed appropriately as diminishing the importance of the audit. And they also terminated her because she was storing key budget files on her laptop. The official argument is that she is unusual in that way.  That there are three separate violations, in their view, that together contributed to the termination process. Correct, your honor. And I think the district court appropriately noted that. It talks about your wholly unprofessional conduct in total. About the email alteration, she immediately says, I've altered the email this way. She's taken out the one line about the number of anticipated removals. If everything else is the same, the timeline is the same, if that were the only basis offered by the board for her termination, would that allow a reasonable jury to conclude that it was pretextual? I don't know. If that were all we were looking at, how would we evaluate whether summary judgment is appropriate? That's hard, your honor. I don't know if that, because that's not what they did. And I just don't even know if they would have, just based on the email. But as the termination letter says, they take everything into account. Her entire course of conduct during that period of time, and that's what led to the termination. And that's why Ms. Wakefield and others are not summary situated. And that's why, as the district court found, the timeline- And on the saving, not saving files to the, saving them only locally, do we have any, is there anything in the record that tells us how other people are dealt with when that's an issue? I mean, that seems fairly trivial at some level. But do we have anything in the record that would tell us how the board treats that typically? Respectfully, your honor, I disagree. That was fairly trivial. Ms. Liesel was the executive director of financial management. She oversaw the budget process. And she had budget files stored on her laptop and not backed up to the system. And that's in the investigator's report. And that is a significant issue, your honor, for any employer, much less a municipality, that has a large board of ed budget, right? And so that wasn't a trivial issue. It was an issue, as well as the fact that- Do we have anything in the record that tells us, I'm not saying it's your burden, but what is there in the record that would tell us how the board typically handles that violation? There is nothing in the record about that, your honor. I'm not aware of that. And it didn't come up down below. And, you know, in this case, what the board decided to do was terminate a very high-level employee who engaged in a series of missteps that warranted termination. And for that reason, your honor, unless your honors have further questions, we'd ask that this report be affirmed. Thank you. My client was called in for an interview. She was told criminal charges might be associated with the interview. She swore to an affidavit, and she said she wanted a lawyer, and she wasn't given a lawyer. And then counsel gets up and says she didn't answer the question. She answered some of the questions and asked for counsel because the notion of a criminal proceeding was over her head. So please take that into account when you hear counsel. Maybe this question is misinformed, but I would ask you to address the main argument that I now understand is being made by the Board of Education, which is that uniquely your client engaged in a series of types of misconduct that no other. Let me answer the question. No, let me finish my question. I just didn't. Let's compare who engaged in it. So you can pick and choose different types of misconduct. But here's a person who, across the board and from a high-level position, has engaged in these misconducts. So she is an X in a sea of O's. Zero, zero, or zero means zero, and that's what we have here. Let's start with the district court's consideration of the issue of the tampering of the e-mail. The district court indicated there was no policy my client violated. There was nothing material that occurred with regard to that. She told the individual she was doing it. There was no concealment, and the individual independently communicated above my client. That would be viewed, in my opinion, as a total pretext. It's meaningless. My client was the supervisor and had the authority to do it. No reasonable jury would ever find that's a reasonable basis to terminate someone. That's reason one. I want you to get to reasons two and three and whatever, but that seems to be premised on the idea that the Board of Education didn't believe that she engaged in the misconduct. If it believed that she engaged in the misconduct, then what's your argument? My argument is Johnson v. C.H. Energy Corp., a case decided by this Court in 2009 in which it took exactly that position and entirely destroyed it, essentially, and said, no, there's a question of fact as to whether the underlying issue happened and whether the underlying issue happened at significance. That's a question of fact. So that's the first point. I think that that may have been slightly overtaken by Swan, but go ahead. I don't think so, honestly. But let me go to the second point. The second point is that my client didn't have certain documents backed up. First of all, my client denies it, creating a question of fact. The investigator can say whatever the investigator wanted, but the investigator never pointed to a single document or file that my client didn't have backed up. My client said, what are you talking about? They're backed up. It's not my computer. In any event, it's your computer. The PC counsel refers to it as her computer. It's not her computer. It's the school district's computer, and it daily backs up the files. But you don't contend the investigator was making findings out of retaliation for the filing of the complaint, right? You can't because of the timeline. The investigator could be wrong, though. The underlying issue is whether it's true and whether any reasonable person could believe it to be true. Seeing the investigative report doesn't allow you to even understand what file is being discussed. My client said in her sworn testimony every file was backed up automatically. The third issue is, and this is the Wakefield confusion, which I'm sorry is causing confusion. The issue is very simple. To the issue that a union member couldn't be disciplined, and that was some significant salient distinction, it's clear that was not. Ms. Wakefield was a union member. Ms. Wakefield was given notice of termination, and she self-terminated. That's what the record demonstrates. But that happened a year after, even though her takings were $230,000 compared to my client's $6,991, that happened a year later after my client filed the claim of retaliation, that's her second claim, with the Kinetic Human Rights and Opportunities Commission in August of 2018. So the point remains, and I haven't heard counsel address the point saliently. It is plain evidence, in my view, of a cover. After my client had said, you are picking on me selectively, that's the issue. Now, the question was raised, well, they started in advance of this. They started in advance of this, and they had all the information. They had all the information from their investigation in March and April. My client was not terminated in March and April. My client was terminated after she filed her complaint on April 30th of 2018, which is powerful evidence that the reasons that they claim were not reasons significant enough before she filed her complaint, but became significant afterwards. I think we have your argument. Thank you very much. Very helpful. We'll reserve the decision.